IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:14CV620-FDW-DSC

| | |
|---|---|
| NICHOLAS JAREK,<br>        Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security Administration,<br>        Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #15) and "Motion for Remand to Consider New and Material Evidence" (document #25) and Defendant's "Motion for Summary Judgment" (document #17), as well as the parties briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motions for Summary Judgment and Remand be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

### I. PROCEDURAL HISTORY

The procedural history is not in dispute. On March 15, 2013, Plaintiff filed an application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income Benefits ("SSI") alleging that he became disabled on January 1, 2009. (Tr. 16, 267). The

1

application was denied initially and upon reconsideration. (Tr. 169-170, 218-225). Plaintiff requested a hearing which was held on March 3, 2014. Plaintiff testified by telephone.[1] (Tr. 36-96).

On May 1, 2014, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled. (Tr. 16-23). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 18). The ALJ also found that Plaintiff suffered from "degenerative disc disease of the cervical and lumbar spines, idiopathic neuropathy, osteoarthritis of the right knee status post tear of the meniscus, Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome (RSD/CRPS) in right ankle, borderline carpal tunnel syndrome, generalized anxiety disorder with depressed mood," which were severe impairments within the meaning of the regulations (Tr. 19) but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 21). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform sedentary work[3] limited as follows:

---

[1] The rules allowing the Social Security Administration to ban individuals from its offices became effective in 2011, following a significant increase in the number of threats to agency employees. *Protecting the Public and Our Personnel to Ensure Operational Effectiveness*, 76 FR 54700 (Sept. 11, 2011). Plaintiff was banned as the result of an implied threat he made against agency personnel. While speaking with an agency employee on the telephone, he stated that he knew why people go on a rampage and people get hurt. (Tr. 228). Plaintiff was sent a Notice informing him of the ban. (Tr. 229-230). The Notice explained that if he disagreed with the ban, he could appeal within sixty days. (Tr. 229). This was in accord with the regulations providing that an individual "must submit [his] appeal in writing to the address identified in the notice within 60 days of the date of the notice." 20 C.F.R. § 422.905. Plaintiff did not appeal the ban. Accordingly, he was not allowed to attend the hearing in person and testified by telephone.

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] Sedentary work involves lifting no more than ten pounds at a time and occasional lifting or carrying of articles like docket files, ledgers, and small tools. 20 C.F.R.§§ 404.1567(a), 416.967(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Id. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Id.

> occasional climbing of ramps and/or stairs; occasional balancing, stooping, kneeling, crawling and crouching; and … frequent handling or fingering. [No] work around heights or … dangerous machinery; and cannot tolerate exposure to excessive humidity and … respiratory irritants. [Plaintiff] can sustain attention to perform simple, routine, repetitive tasks; he can tolerate frequent contact with coworkers and supervisors and occasional contact with the public; and is limited to work that does not involve assembly line pace.

(Tr. 23). The ALJ found that Plaintiff could not perform his past relevant work as an automobile body repairman or car salesman. (Tr. 29).

The ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as a charger II (jury bench hand), addresser, and call out operator that Plaintiff could perform. The V.E. stated that more than 900 of these jobs were available locally and more than 80,000 nationally. (Tr. 33). The V.E. stated that there was no conflict between her testimony and the Dictionary of Occupational Titles ("DOT").

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 30).

On September 2, 2014, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-4).

Plaintiff filed the present action on November 5, 2014. He assigns error to the Agency's decision to ban him from personally appearing at the hearing. Plaintiff's "Memorandum … in Support of Motion for Summary Judgment" at 4 (document #15). Plaintiff also assigns error to the ALJ's evaluation of his medical providers' opinions and the VE's testimony. Id. In his

3

Supplemental Brief,[4] Plaintiff assigns error to the ALJ's use of boilerplate language in assessing his credibility, evaluation of his deficiency in concentration, persistence, and pace, and failure to conduct a function-by-function analysis of his RFC. Document #24 at 1. Plaintiff also assigns error to the Appeals Council's decision that additional records submitted from Doctors Mark Hines and Benjamin Missick did not warrant remand. Id. Finally, Plaintiff contends that remand is necessary for the Commissioner to consider new evidence including an April 4, 2015 psychological evaluation, notes from Daymark Recovery Services dated March 26 to April 28, 2015, and a March 29, 2015 decision from the North Carolina Department of Health and Human Services ("NCDHHS") finding him disabled for Medicaid purposes. Document #25.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact,

---

[4]On June 11, 2015, the Court sua sponte granted the parties leave to file supplemental briefs limited to addressing the potential impact of the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Document #20.

4

if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[5] as that term of art is defined for Social Security purposes.

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

Plaintiff's assignment of error related to his exclusion from the hearing is without merit. The Agency banned him from its offices in accordance with applicable regulations and Plaintiff did not appeal that decision. 20 C.F.R. § 422.905. Although Plaintiff argues that some of the transcript is inaudible, he has not shown that those portions were material here. McGlone v. Heckler, 791 F.2d 1119 (4th Cir. 1986) ("The plaintiff shoulders the burden of showing that some material evidence was not reported or was so incompletely reported that its effect was obscured. There was no attempt to make any such showing.")

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff asserts that the ALJ and Appeals Council failed to give proper weight to medical source opinions, and that additional opinions submitted to the Court also warrant remand. Plaintiff first argues that the ALJ did not give proper weight to the opinions of Dr. Benjamin Missick, a treating

physician, and Dr. Chad Ritterspach, a consultative psychological examiner.

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

On February 28, 2013, Dr. Missick wrote a letter addressed "To Whom It May Concern" referencing Plaintiff's right knee status post arthroscopy with partial lateral meniscectomy. He opined that, "[a]s stated by Mr. Jarek, this condition has hindered him from gainful employment and negatively impacts his quality of life." (Tr. 512). However, as the ALJ noted, follow-up treatment records from Plaintiff's knee surgery show that he was doing well except for a complaint of numbness in his right ankle. (Tr. 28, 470). The ALJ further found that Dr. Missick provided no objective clinical evidence to support his opinion. (Tr. 28). Instead, Dr. Missick simply accepted Plaintiff's subjective report of his symptoms and limitations. (Tr. 28). The ALJ may accord less weight to a treating physician's opinion based mainly upon a claimant's subjective complaints. Maestro, 270 F.3d at 178.

Dr. Missick submitted a second "To Whom It May Concern" letter dated November 25, 2013. (Tr. 732). The ALJ discounted Dr. Missick's statement that Plaintiff continued to suffer from debilitating pain and was unable to drive, walk, stand, or sit for any extended period of time

and that any increased activity rendered him unable to perform simple activities of daily living. These opinions were not substantiated by the medical record or Dr. Missick's own notes. (Tr. 28). Dr. Missick noted that Plaintiff found relief with Cymbalta, and he should follow up with the website for help with the cost. (Tr. 514). In March 2013, Dr. Missick reported that Plaintiff rode a bike twenty-seven miles. (Id.). Plaintiff told Dr. Missick that his symptoms improved greatly with the use of marijuana and Skelaxin. (Tr. 520, 521). He also told Dr. Missick that massages helped. (Tr. 520). Dr. Missick recommended a somatoform disorder workup, but Plaintiff failed to follow up. (Tr. 27, 69, 557).

Dr. Missick's conclusion that Plaintiff was "unable to work" is not a medical opinion, but rather an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1-3), 416.927(d)(1-3).

Plaintiff contends that the ALJ did not properly consider Dr. Ritterspach's consultative opinion regarding his ability to relate to others and tolerate the stresses of day-to-day work activity. The ALJ must consider opinions provided by consulting medical sources "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184, at *7. The ALJ must address those opinions, and explain why they were not adopted if they conflict with her assessment of the claimant's RFC. SSR 96-8p, available at 1996 WL 374184, at *7. The ALJ adhered to those guidelines and her assessment of Dr. Ritterspach's opinion is supported by substantial evidence.

Dr. Ritterspach found that Plaintiff could understand, retain, and follow directions; sustain attention to perform simple, repetitive tasks; possessed a below average ability to relate to others including co-workers and supervisors due to pain-related anger lapses; and may suffer mental stress and pressures associated with day-to-day work activity. (Tr. 21, 579). The ALJ gave significant weight to Dr.

Ritterspach's assessment. (Tr. 21). In doing so, the ALJ specifically noted Dr. Ritterspach's opinion that Plaintiff might have difficulties tolerating the mental stress and pressures of day-to-day work activity. The ALJ also considered Dr. Ritterpach's opinion that Plaintiff could understand, retain, and follow directions and sustain attention to perform simple, repetitive tasks. She considered the State agency mental health consultants' opinions that Plaintiff had a moderate limitation in his ability to maintain concentration, persistence, or pace, but could perform simple, routine, repetitive tasks, and concluded that Plaintiff's limitations in this area were no greater than moderate. (Tr. 22). The ALJ specifically found that despite a moderate limitation, Plaintiff could perform simple, routine, and repetitive tasks. (Tr. 28). The ALJ also found that his ability to keep pace was questionable, so she limited him to work that does not involve an assembly line pace. (Id.). The Court finds that this detailed analysis of opinions by Dr. Ritterspach's and the agency consultants provides substantial evidence supporting the RFC limitation to simple, routine, repetitive tasks not at an assembly line pace. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) ("[t]he ability to perform simple tasks differs from the ability to stay on pace. Only the later limitation would account for a claimant's limitation in concentration, persistence or pace").

The ALJ found that Dr. Ritterspach's opinion regarding Plaintiff's social functioning was consistent with the State agency psychological consultants' opinions. (Tr. 21). The State agency psychological consultants who reviewed Dr. Ritterspach's notes agreed that Plaintiff is moderately limited in his ability to interact appropriately with the general public, and might not do well in a highly public setting. (See Tr. 145, 148, 162, 165,183,186, 202, 205). The ALJ concurred with this assessment. (Tr. 22). These opinions provide substantial evidence supporting the ALJ's determination that Plaintiff could tolerate frequent contact with coworkers and supervisors, but only occasional contact with the public. (Tr. 23).

Following the ALJ's decision, Plaintiff submitted an August 7, 2014, "To Whom It May Concern"

9

letter from Dr. Missick to the Appeals Council. (Tr. 372). In this letter Dr. Missick concluded that "as a result of Mr. Jarek's physical and psychological limitations, he is currently incapable of sustained work activity at any exertional level, and likely will be for the foreseeable future" (Id.).

The Appeals Council must consider whether evidence submitted with a request for review is new, material, and relates to the period at issue in the ALJ's decision. 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1); Wilkins v. Sec'y of Health and Human Servs, 953 F.2d 93, 95-96 (4th Cir. 1991). The Appeals Council considered Dr. Missick's letter, but determined that it related to a time after the ALJ's May 1, 2014 decision. (Tr. 2). Dr. Missick specifically opined that Plaintiff was "currently" incapable of sustained work activity. (Tr. 372). This opinion was not relevant to Plaintiff's disability beginning on or before May 1, 2014 and the Appeals Council's properly declined to consider it. 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1); Wilkins, 953 F.2d at 95-96.

Plaintiff attached an August 4, 2014 letter from Dr. Mark Hines, a treating physician, to his Summary Judgment Memorandum. Dr. Hines wrote that he was not a disability physician, but that Plaintiff's pain issues "likely make him disabled at this time." Since Plaintiff did not submit Dr. Hines' letter to the Agency during the administrative review process, the Court's consideration is limited to the issue of whether a Sentence Six remand is warranted. See Smith v. Chater, 99 F.3d 635, 638 n. 5 (4th Cir. 1996). Sentence Six of 42 U.S.C. § 405(g) provides:

> The court may, . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

To justify a Sentence Six remand, the Act requires a showing that belatedly submitted evidence is both "new" and "material," and that the plaintiff has "good cause" for failing to submit the evidence earlier. Wilkins, 953 F.2d at 96 n. 3. The Supreme Court has recognized that in the context of a Sentence Six

remand:

> [T]he district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative decision. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). The plaintiff has the burden of demonstrating that all of the Sentence Six requirements are met. Hayes v. Colvin, No. 2:12-cv-4, 2013 WL 5729538, at *3 (W.D. N.C. Oct. 22, 2013). Plaintiff has not met that burden. Assuming arguendo that Dr. Hines' report was "new" and that Plaintiff had "good cause" for not submitting it earlier, this evidence is not "material" because it did not "relate[] to the period on or before the date of the ALJ's decision." Wilkins, 953 F.2d at 96. Dr. Hines explicitly stated that his opinion pertained to Plaintiff's condition "at this time" as of August 4, 2014, three months after the ALJ's decision. This evidence is not material and remand is not required. Wilkins, 953 F.2d at 96.

The same analysis applies to the April 4, 2015, psychological evaluation by Dr. Ritterspach, notes from Daymark Recovery Services covering the period from March 26, 2015 through April 28, 2015, and the March 19, 2015 decision by NCDHHS submitted along with Plaintiff's Motion to Remand.

Plaintiff has not satisfied the requirements for a Sentence Six remand. This evidence is not "material" because it does not "relate[] to the period on or before the date of the ALJ's decision." Wilkins, 953 F.2d at 96. The evidence from Dr. Ritterspach comes from a psychological evaluation conducted on April 4, 2015 and reflects Plaintiff's condition eleven months after the ALJ's decision. Similarly, the notes from Daymark Recovery Services cover the period March 26, 2015 through April 28, 2015 and discuss Plaintiff's condition at that time.

The NCDHHS decision is not "material" since there is not a reasonable probability that it would

have changed the ALJ's determination. Wilkins, 953 F.2d at 96. A disability determination by another agency is not binding on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904. The NCDHHS decision is based upon evidence that is not relevant to the time period considered by the ALJ. The NCDHHS decision cites the "To whom it may concern" letter from Dr. Missick dated August 7, 2014, and the letter from Dr. Hines dated August 4, 2014. As previously stated, neither of those letters provides grounds for remand.

Plaintiff's reliance on Bird v. Commissioner of Social Security Administration, 699 F.3d 337 (4th Cir. 2012) is misplaced. In Bird there were no medical records from the relevant time period. Thus there was a need to infer from later records what Bird's condition was at the time in issue. Bird, 699 F.3d at 339-340. Here, there are hundreds of pages of medical records from the relevant time period comprising a contemporaneous record of Plaintiff's condition at that time. There was no need to consider later medical records in assessing Plaintiff's condition.

Plaintiff also contends that the ALJ failed to consider his ability to "sustain [] essential functions." The Court considers this contention as an assignment of error that the ALJ failed to conduct a function-by-function RFC analysis. Plaintiff describes these "essential functions" as the ability to complete a normal workday without unscheduled breaks, maintain regular attendance, and sustain concentration, persistence, and pace throughout ninety percent of the workday, eight hours a day, five days a week. The ALJ did consider these factors and her analysis is supported by substantial evidence.

The ALJ recognized that her RFC determination must include consideration of Plaintiff's ability to perform work related activities on a "sustained" basis. (Tr. 18). The RFC states that Plaintiff can "sustain" attention to perform simple, repetitive tasks. (Tr. 23).

The ALJ concurred with the State agency mental health consultants. (Tr. 22). These experts determined that Plaintiff was not significantly limited in his ability to complete a normal workday and

workweek or to perform at a consistent pace without an unreasonable amount of rest periods. (Tr. 148, 185). He was not significantly limited in his ability to maintain regular attendance. (Tr. 148, 185). He could perform simple, routine, repetitive tasks (Tr. 148, 186) "on a sustained basis." (Tr. 186).

Finally, the ALJ concurred with Dr. Ritterspach's consultative opinion. (Tr. 21). The ALJ noted that Dr. Ritterspach said Plaintiff "may have difficulties tolerating the mental stresses and pressures associated with day-to-day work activity." However, Dr. Ritterspach further stated that Plaintiff "can sustain attention to perform simple, repetitive tasks." (Tr. 21, 22, 579).

Plaintiff also assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that her credibility assessment is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

13

The record contains evidence of Plaintiff's degenerative disc disease of the cervical and lumbar spines, idiopathic neuropathy, osteoarthritis of the right knee status post tear of the meniscus, RSD/CRPS in right ankle, borderline carpal tunnel syndrome, and generalized anxiety disorder with depressed mood – which <u>could</u> be expected to produce some of the symptoms he claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." <u>Id.</u>

The Social Security Administration has drafted template language for inclusion in ALJ decisions. <u>See</u> <u>Mascio</u>, 780 F.3d at 638 n.9 (citing <u>Bjornson v. Astrue</u>, 671 F.3d 640, 644–45 (7th Cir. 2012)). The following language related to determining credibility was criticized in <u>Mascio</u>:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

<u>Id.</u> at 639. The Fourth Circuit found that this language implies that a claimant's ability to work is determined first and then used to assess his credibility. The Court concluded that the language

conflicts with the Agency's regulations. Id. at 639 (citing Bjornson, 671 F.3d at 645; 20 C.F.R. § 416.929(a); SSR 96-8p).

In her Supplemental Brief, Defendant concedes that the "language used by the ALJ in the instant case differs somewhat from Mascio, but it nonetheless may give the impression that the ability to work was determined first and then used to determine [Plaintiff's] credibility." Document #29 at 2. However, the Fourth Circuit stated that use of this language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere." Id.; accord Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."). Here, the Court finds that the ALJ engaged in a thorough, well-reasoned credibility evaluation that renders any error harmless.

Prior to Mascio, this Court held that "the boilerplate did not comprise the ALJ's entire credibility discussion, but merely served as a transition into a more detailed discussion juxtaposing Plaintiff's complaints with medical evidence that showed Plaintiff functioning at a higher capacity." Medley v, Astrue, No. 3:12-CV-311-MOC-DCK, 2013 WL 1858559, *7 (W.D.N.C. Mar. 28, 2013).

Here, the ALJ found substantial evidence to support a finding that Plaintiff's allegations were less than fully credible. The ALJ considered both the objective medical evidence and the regulatory credibility factors including daily activities; the location, duration, frequency, and intensity of symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medications used to alleviate pain or symptoms; and other treatments utilized to relieve pain or symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c).

The ALJ found that the objective medical evidence failed to support Plaintiff's allegations of disabling symptoms. (Tr. 25). The ALJ noted that while Plaintiff's medical tests, scans, x-rays,

15

and laboratory work showed evidence of impairments, his condition was still described as mild, minor, or minimal and without neurocompressive changes. (Tr. 25-26). EMG nerve conduction studies and blood tests were normal. (Tr. 25-26). The ALJ acknowledged the evidence indicating that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spines, idiopathic neuropathy, osteoarthritis of the right knee status post tear of the meniscus, RSD/CRPS in the right ankle, and borderline carpal tunnel syndrome, and accordingly limited him to a range of sedentary work. (Tr. 27).

The objective medical evidence was not the only consideration in the ALJ's credibility analysis. She also discussed the regulatory factors. She considered Plaintiff's daily activities – noting that Plaintiff read, wrote, watched television, drove locally, did light housework, managed his self-care, prepared simple meals, and shopped. (Tr. 22).

The ALJ considered Plaintiff's alleged symptoms of pain and inflammation throughout his body (Tr. 23-24 ); right leg, knee, and ankle pain (Tr. 21); bilateral hand pain (Tr. 21); depressed mood (Tr. 21); and short temper. (Tr. 22).

The ALJ noted that Plaintiff's medications included anti-inflammatories, muscle relaxers, low dose steroids, and opioids. He did not respond well to nociceptive treatment such as mild first level drugs. He responded well to Subutex, but his physician discontinued it when Plaintiff tested positive for marijuana. (Tr. 27). The ALJ also considered Plaintiff's testimony that his current medication affected his focus and concentration, and limited him to simple, routine, repetitive tasks. (Tr. 28). The ALJ further explained that the limitation to the simple, routine, repetitive tasks involving unskilled work adequately addressed Plaintiff's mental health limitations. (Tr. 28).

The ALJ also noted that Plaintiff saw multiple specialists, including pain clinic physicians, orthopedists, and neurologists, but was not always compliant with treatment. Plaintiff testified that

16

did not follow through with an examination suggested by his physician and he would stop taking medications on his own. (Tr. 27).

In short, the ALJ "properly analyzed [Plaintiff's] credibility," so any use of boilerplate language in the credibility determination was at most harmless error. Mascio at 639.

Plaintiff assigns error to the ALJ's use of the V.E.'s testimony which was based in part on an RFC restriction to "simple, routine, repetitive tasks … not involv[ing an] assembly line pace." (Tr. 23). Plaintiff contends that the ALJ should have placed greater restrictions on his ability to remain on task. The record here does not support such a finding. As discussed above, Dr. Ritterspach found that Plaintiff's concentration was only moderately impaired and that he could maintain attention to perform simple, repetitive tasks. (Tr. 22, 28, 578-79). The State agency mental health consultants also determined that he could perform simple, routine, repetitive tasks. The ALJ's step five analysis was proper.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and her ultimate determination that Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

Plaintiff's "Motion for Summary Judgment" (document #15) and "Motion for Remand to Consider New and Material Evidence" (document #25) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

_____
David S. Cayer
United States Magistrate Judge